IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KATHLEEN A. BUNT          )
                               )
     v.                   )      NO. 3:19-01013
                               )
CLARKSVILLE MONTGOMERY   )
COUNTY SCHOOL SYSTEM       )

**To: Honorable Aleta A. Trauger, District Judge**

# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered November 25, 2019 (Docket Entry No. 4), the Court referred this *pro se*

action to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1), Rule 72 of the

Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is Defendant's motion for summary judgment (Docket

Entry No. 33), to which Plaintiff has responded in opposition.  For the reasons set out below, the

undersigned respectfully recommends that the motion for summary judgment be GRANTED IN

PART and DENIED IN PART.

## I.  PROCEDURAL BACKGROUND

Kathleen Bunt ("Plaintiff"), a resident of Clarksville, Tennessee, filed this *pro se* lawsuit in

state court on October 17, 2019, against the Clarksville Montgomery County School System

("Defendant" or "CMCSS").  The case was subsequently removed to federal court in November

2019, on the basis of federal questions jurisdiction.  *See* Docket Entry No. 1.  On May 13, 2020,

Plaintiff filed a final amended complaint ("FAC") (Docket Entry No. 30), raising claims against

CMCSS for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq*.

("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA").

*See* FAC at 2 and 30.  She also asserts that several other federal and state statutes, regulations, and

constitutional provisions have been violated. *Id.* at ¶ 39.[1] The overriding factual contention underlying Plaintiff's lawsuit is that she has been wrongfully denied a full time teaching job with CMCSS because of unlawful retaliation and age discrimination. Pretrial activity, including a period for discovery, has concluded pursuant to the deadlines set out in a scheduling order. A jury trial in the case has been continued until resolution of the pending motion for summary judgment. *See* Order entered August 19, 2020 (Docket Entry No. 40).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1965. After earning a college degree, she began working in the teaching profession in 1989 as a Career Specialist/Teacher for non-profit foundation that administered a cooperative program, Jobs for Tennessee Graduates ("JTG"), with the Tennessee Department of Education. Plaintiff's worked in this job, primarily at Whites Creek High School in Nashville, Tennessee, for 21 years until she was terminated from her employment in April 2010.[2] Believing that her termination was an act of racial discrimination against her because she is Caucasian, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on May 19, 2010 ("2010 Charge"),[3] and later filed a lawsuit against her employer in state court, eventually settling the case in 2014.[4]

Subsequent to her termination, Plaintiff began working as a substitute teacher at schools within CMCSS, first through an outside employment staffing service from 2012 to 2014, and then

---

[1] 42 U.S.C. § 2000e-8(c); 29 C.F.R. §§ 1602.14, 1602.31, 1602.39, 1602.40, and 1602.56; Executive Order 11246; 42 U.S.C. § 2000d *et seq.* ("Title VI"); 29 C.F.R. §§ 1627.2 and 1627.3(b)(3); Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401 *et seq.*; Tennessee Public Records Act ("TPRA"), 10-7-501 *et seq.*; 28 U.S.C. § 1658; *Jones v. RR Donnelley & Sons Co.*, 124 S.Ct. 1836 (2004); 42 U.S.C. § 1983; and the Fourteenth Amendment.

[2] *See* FAC at ¶¶ 6-7.

[3] *See* Docket Entry No. 51-2 at 55.

[4] *See* FAC at ¶¶ 14-15.

2

from 2012 to the present directly for CMCSS after it ceased using the staffing service.[5]  Plaintiff asserts that both prior to and while working as a substitute teacher, she applied for full time teaching positions and full time office/support staff positions with CMCSS through "AppliTrack," the electronic on-line application system utilized by CMCSS, which she asserts required her to input certain information and select open positions and then submit supporting documents by mail, fax, or in person upon receiving a confirmation e-mail about the application.[6]  Plaintiff was not interviewed or hired for any positions for which she applied over several years and, after not being interviewed for a Business Education Teacher position listed on the CMSS website in May 2017, she contacted the CMCSS Human Resources Department ("HR") to inquire about the status of her employment application.[7]  Based upon her communications with several HR employees during August and September 2017, she concluded that her "electronic application" did not exist in the AppliTrack system and that the physical documents that she had sent to CMCSS in support of her AppliTrack application could not be located and had likely been destroyed.[8]

Plaintiff asserts that CMCSS failed to provide her with either a satisfactory explanation for why her AppliTrack application and records could not be located or an assurance that her application in the AppliTrack system existed and was able to be viewed by the decision makers for open positions at CMCSS from 2009 to 2017.  She contends that CMCSS destroyed her application records, in violation of federal record keeping laws and regulations, and prevented her from being interviewed and considered for open positions as a form of retaliation against her because she engaged in protected activity when she filed the 2010 Charge and she pursued an employment discrimination lawsuit against her former employer.[9]

---

[5] *Id*. at ¶ 18.

[6] *Id*. at ¶ 6, 17, and 20.

[7] *Id*. at ¶ 19.

[8] *Id*. at ¶ 25-34.

[9] *Id*. at ¶ 36.

3

During the same time period when Plaintiff was inquiring about the status of her AppliTrack application, CMCSS was transitioning to a new on-line job application system called New Recruit and Hire.[10]  In October 2017, Plaintiff applied for a Business Education Teacher position at Northwest High School and was subsequently interviewed for the position by Theresa Muckleroy ("Muckleroy"), who was the principal of the school at the time and the hiring decision maker for the position.[11]  Muckleroy ultimately selected another applicant for the position, Leander Peters ("Peters"), who was the only other interviewee and was 38 years old at the time he was selected.[12] Plaintiff claims that she was not selected because of age discrimination and bases her claim upon her belief that she possessed better qualifications for the position than Peters and upon what she contends was a disingenuous or a "guise" interview by Muckleroy, an interview during which Plaintiff alleges that Muckleroy specifically asked Plaintiff her age.[13]  Plaintiff further contends that several Business Education Teacher positions, for which she was not interviewed, were filled by CMCSS between 2009 and 2017 with individuals who were under the age of 40 years and who Plaintiff believes were less qualified than she.[14]

On January 10, 2018, Plaintiff filed a charge of discrimination with the EEOC ("2018 Charge"), and she received a right-to-sue letter, dated July 19, 2019.[15]  The 2018 Charge has not been made a part of the record, but Plaintiff asserts that she alleged "retaliation, routine destruction of her applicant records, blocking of her application from hiring principals/supervisors," as well as "age discrimination which should have been written on a separate charge as it is unrelated to the

---

[10] *Id.* at ¶¶ 23-24.

[11] *Id.* at ¶¶ 101 and 104.

[12] *Id.* at ¶ 109.

[13] *Id.* at ¶¶ 104-111.

[14] *Id.* at ¶¶ 98-99.

[15] *See* Docket Entry No. 14-1.

4

retaliation and destruction of records and blocking of application charge. The investigator neglected to do this." *See* FAC at ¶ 37 and ¶ 97.

Plaintiff also includes in her FAC allegations related to a second charge of discrimination that she filed against CMCSS on August 26, 2019, for retaliation that she alleges has occurred subsequent to filing the 2018 Charge and for which no decision has been reached by the EEOC,[16] as well as allegations about CMCSS's history of hiring substitute teachers into full time positions and about her non-selection for a teaching position in December 2019.[17]

### III. MOTION FOR SUMMARY JUDGMENT

CMCSS contends that it is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure because there are no genuine issues of material fact and the undisputed facts demonstrate that it is entitled to dismissal of the case as a matter of law. In support of its motion, CMCSS provides a memorandum of law ("Memorandum in Support") (Docket Entry No. 34), a statement of undisputed material facts ("SUMF") (Docket Entry No. 35), and the affidavits and documents attached thereto of: (1) Melissa Izatt, the Director of Educator Quality for CMCSS and former Classified Employment and Substitute Teacher Coordinator/HR Coordinator (Docket Entry No. 33-1); (2) Jeanine Johnson, the Chief Human Resources Officer for CMCSS (Docket Entry No. 33-2); and Muckleroy (Docket Entry No. 33-3).

CMCSS argues that Plaintiff lacks evidence supporting a claim that it took any kind of adverse action against her in retaliation for her 2010 Charge or her lawsuit against her former employer. CMCSS contends that its officials were not aware of her prior protected activity until she filed the instant lawsuit and thus could not have retaliated against her as alleged regarding her AppliTrack application for any open positions. CMCSS also contends that physical documents for all applicants, not just for Plaintiff, were destroyed and that her prior protected activity had no role

---

[16] *See* FAC at ¶¶ 113-124.

[17] *Id.* at ¶¶ 126-136 and 140.

in any issues that existed with respect to her AppliTrack application. With respect to Plaintiff's claim of age discrimination, CMCSS argues that Plaintiff has no actual evidence that supports a claim that she was not hired for any unidentified positions between 2009 and 2017 because of her age and, further, that any claim that she was not selected for a position is time barred to the extent that it occurred more than 300 days prior to Plaintiff's January 2018 Charge. CMCSS also argues that a legitimate, non-discriminatory reason existed for the decision made by Muckleroy to not hire Plaintiff into the Business Education Teacher position at Northwest High School in October 2017, namely, Muckleroy believed that Peters was the best candidate for the position. Finally, CMCSS argues that Plaintiff's FAC does not satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a) and that she fails to state claims by her reference to other federal and state statutes.

In response, Plaintiff submits a response to CMCSS's SUMF (Docket Entry No. 50), a memorandum ("Memorandum in Opposition") (Docket Entry No. 51), and 544 pages of exhibits (Docket Entry Nos. 51-2, 51-3, 51-4, and 51-5).[18] Plaintiff contends that CMCSS has provided untruthful or misleading evidence in support of its motion and that she has set forth sufficient evidence to raise factual disputes to require that her claims proceed to trial. She argues that she has raised reasonable inferences to support a claim that CMCSS acted in retaliation against her by blocking her AppliTrack application and preventing her from being considered for open positions. She also argues that she has provided evidence of younger teachers who were hired for positions for which she should have been interviewed and hired and that CMCSS's explanation for why she was not hired for a full time position is unworthy of belief and thus indicative of pretext for age discrimination.

In a reply, CMCSS contends that Plaintiff has not adequately supported her response by pointing to evidence that is in the record or is admissible and that she has not supported her claims

---

[18] Plaintiff originally filed a 267 page memorandum (Docket Entry No. 41) and a computer flash drive containing exhibits of an unknown length. The Court directed Plaintiff to re-file a response that complied with the page limitation requirement set out in Local Rule 7.01(a)(3) and re-file her supporting exhibits in the proper form. *See* Order entered September 14, 2020 (Docket Entry No. 46).

with deposition transcripts, answers to interrogatories or requests for admissions, or recent affidavits.[19]  Reply (Docket Entry No. 52).

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(a).  "By its very terms, this standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment.  On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.' " *Id*.  A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law."  *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 640 (6th Cir. 2006).  A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that it believes demonstrate the absence of a genuine dispute over material facts.  *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018); Rule 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.

The Court should view the facts and draw all reasonable inferences in favor of the non-moving party.  *Id*.  Credibility judgments and weighing of evidence are improper.  *Hostettler*

---

[19] CMCSS  points out that the only affidavits or declarations provided by Plaintiff are her own affidavit and two declarations, which are from 2012 and were filed as part of Plaintiff's state court lawsuit against her former employer.  *See* Docket Entry No. 51-2 at 34-54.

7

*v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).  As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate.  *Id*.  The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question.  *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party.  *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## V. ANALYSIS

A. Plaintiff's *pro se* Response

As an initial matter, the Court is unpersuaded by CMCSS's contention that summary judgment is warranted solely because of Plaintiff's failure to properly support her motion through citations to the record or with admissible evidence that is in the record.  It is apparent that the *pro se* Plaintiff has made a good faith attempt to directly respond to both CMCSS's arguments for summary judgment and its statement of undisputed facts, to point out what she believes are the disputed facts, and to present the evidence she believes supports her claims.  While Plaintiff's failure to support her response with her own recent affidavit or declaration is unexplained and significant,[20] many of the documents that she has submitted as exhibits and many of the disputed facts that she points to are based upon events, documents, and facts about which she presumably has direct personal knowledge and about which she could testify.  The Court is not inclined to wholly disregard such evidence in the context of review of the motion for summary judgment.  *See Thomas v. Haslam*, 303 F. Supp.3d 585, 624 (M.D.Tenn. 2018) (acknowledging the court's discretion to consider the substance of material presented in opposition to summary judgement, even if

---

[20] Plaintiff makes numerous factual statements in her Memorandum in Opposition and in her response to the SUMF.  However, her statements have not been made in an affidavit that is sworn to under oath or affirmation or been submitted under the penalty of perjury in the form of a properly verified declaration.  Unsworn statements cannot be considered as evidence rebutting a motion for summary judgment.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991).

inadmissible in the form presented, if such material could be presented in an admissible form at trial); *Mangum v. Repp*, 2017 WL 57792 at * 5 (6th Cir. Jan. 5, 2017). Plaintiff's claims should rise or fall based upon their merit, and the Court is reluctant to place form over substance by essentially disregarding Plaintiff's good faith effort to support her case to the best of her abilities as a layperson.

B. Timeliness of Plaintiff's Title VII and ADEA Claims

The filing of a charge of discrimination within 300 days of the alleged unlawful employment conduct is a prerequisite to bringing a lawsuit under Title VII and the ADEA. *See* 42 U.S.C. § 2000e-5(e); *Amani v. Oberlin College*, 259 F.3d 493, 498-99 (6th Cir. 2001); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992).[21] The failure to exhaust administrative remedies through the timely filing of a claim is an appropriate basis for the dismissal of a claim. *See Williams v. Northwest Airlines, Inc.*, 53 Fed.App'x 350, 351 (6th Cir. 2002). Thus, any claims based upon events occurring more than 300 days prior to the charge filed by Plaintiff on January 19, 2018, i.e. events occurring prior to March 26, 2017, are presumptively viewed as being barred as untimely.

Plaintiff argues that the "continuing violation" doctrine permits her to pursue claims in this lawsuit that are based upon allegations about events that began in 2009 and continued to the time of her lawsuit. While the continuing violation doctrine may arguably hold some applicability to her claim that CMCSS, over the course of several years, retaliated against her by purposefully blocking her AppliTrack application and by destroying any related physical documents, it does not apply to claims based upon her failure to be hired by CMCSS for any specific position. The refusal to hire an applicant is a discrete act that constitutes a separate "unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002). Such acts must be timely raised in an

---

[21] Because Tennessee is a "deferral state" for the purposes of federal discrimination statutes, Plaintiff is permitted 300 days within which to file a charge of discrimination. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir. 2002).

administrative charge in order to be actionable in a subsequent lawsuit. *Id.*; *Broadway v. United Parcel Serv., Inc.*, 499 F.Supp.2d 992, 999 (M.D.Tenn. 2007).

Accordingly, any claim made by Plaintiff that she was not hired for a position prior to March 26, 2017, because of retaliation or age discrimination is barred as untimely. It is simply too late for Plaintiff to now assert, for example, that she was wrongfully denied a job position in 2009 or 2012 or even in 2015. To litigate such claims, Plaintiff was required to have timely pursued them through the administrative process, a process that there she was unquestionably familiar with as early as 2010 as evidenced by her filing of the 2010 Charge.

C. Title VII Retaliation Claim[22]

Title VII's anti-retaliation provision provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Plaintiff's claim must be supported by direct evidence of retaliation or by circumstantial evidence that raises an inference of unlawful retaliation. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence is evidence, which if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). For example, an actual statement by an employer "proclaiming his or her ... animus" constitutes direct evidence of discrimination. *Smith v. Chrysler*

---

[22] Plaintiff also raises her claims under the THRA. Because claims under the THRA are analyzed under the same analysis as claims brought under the federal anti-discrimination statutes, *Bryant v. Rolling Hills Hosp., LLC*, 836 F.Supp.2d 591, 605 n.13 (M.D.Tenn. 2011), the Court's analysis of her retaliation claim under Title VII applies equally to her claim under the THRA.

10

*Corp.*, 155 F.3d 799, 805 (6th Cir.1998) (*quoting Robinson v. Runyon*, 149 F.3d 507, 512–14 (6th Cir.1998)).  Plaintiff has set forth no direct evidence of retaliation on the part of CMCSS.

In the absence of direct evidence, Plaintiff must proceed via the *McDonnell Douglas* burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), that first requires her to establish a *prima facie* case.  To establish a *prima facie* case of retaliation using circumstantial evidence, Plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by CMCSS; (3) thereafter, CMCSS took an adverse action against Plaintiff; and (4) a causal connection existed between the protected activity and the adverse action.  *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).  Once Plaintiff establishes a *prima facie* case, the burden shifts to CMCSS to articulate a non-discriminatory reason for its actions. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).  If CMCSS articulates such a legitimate, non-discriminatory reason, Plaintiff, to avoid summary judgment, must present evidence to show that the stated reason is merely a pretext for retaliation.  *Id.*  Pretext can generally be established by showing that the proffered reason is factually false, that it did not actually motivate the challenged adverse action, or that it was insufficient to motivate the adverse action.  *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012).  "[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional [retaliation]."  *Id.* (*quoting Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

In the instant case, the Court finds that summary judgment should be granted to CMCSS on Plaintiff's retaliation claim.  There is simply insufficient evidence before the Court upon which any reasonable jury could find that CMCSS retaliated against Plaintiff because she had engaged in protected activity involving her former employer.

First, Plaintiff has no good evidence that CMCSS actually took an adverse action against her, the second requirement for her *prima facie* case.  Plaintiff's theory is that CMCSS, through its employees, purposefully deleted, blocked, or otherwise took steps to prevent her AppliTrack application from being viewed by the decision makers for open positions at CMCSS from 2009 to

11

2017. But the only actual evidence Plaintiff has provided to support this theory are (1) her recounting of conversations she had with CMCSS employees in 2017 about her AppliTrack application and (2) e-mail exchanges that she had with CMCSS employees around the same period, exchanges which she contends offer inferential clues supporting her theory. *See* FAC ¶¶ 6-96; Memorandum in Opposition at 1-3  The Court has reviewed this evidence and finds that it offers only a scintilla of proof supporting Plaintiff's claim that CMCSS purposefully blocked her AppliTrack application from being viewed and purposefully prevented her from being considered for open positions. At best, Plaintiff's evidence shows that, during a time period in 2017, there may have been issues with the status of her AppliTrack application. This falls far short of showing the existence of a nearly decade long scheme of preventing her application from being viewed as se alleges.

Second, Plaintiff has no actual evidence that CMCSS was aware of her protected activity, the third required element of her *prima facie* case. Plaintiff primarily contends that individuals associated with her former employer and/or with her 2010 Charge must have communicated with CMCSS employees over the years and provided knowledge to them of her 2010 Charge and/or lawsuit, and she offers scenarios which she contends are sufficient to raise reasonable inferences of knowledge on the part of CMCSS. *See* FAC at ¶¶ 62-70; Memorandum at 7-8. However, Plaintiff's contention is based upon conjecture, speculation, and supposition on her part, and no reasonable inference of knowledge on behalf of CMCSS employees arises from what Plaintiff has presented as evidence. *See Adams v. Williamson Med. Ctr.*, 2019 WL 4820457 at *14 (M.D.Tenn. Oct. 1, 2019) (plaintiff's speculation that supervisor "must have known" about Plaintiff's protected activity was not sufficient to create inference satisfying knowledge element of *prima facie* retaliation case). Plaintiff additionally points to inconsistencies and language in the affidavits of Muckleroy, Johnson, and Izatt that she contends shows that they must have had knowledge of her protected activity. *See* Memorandum in Opposition at 8-12. Once again, Plaintiff's contention is based upon supposition on her part that fails to raise a reasonable inference of knowledge on the part of CMCSS.

12

Third, Plaintiff's evidence is lacking with respect to the final element of her *prima facie* case, the existence of a causal link between her protected activity and any issues concerning her AppliTrack application and the destruction of her related physical documents. Given Plaintiff's lack of evidence showing the existence of an actual scheme to prevent her application from being viewed, she cannot show any temporal connection between her protected activity and an actual step that was taken by a CMCSS employee to put into action the alleged scheme.[23] Further, Plaintiff's argument that a causal connection can be reasonably inferred by the pattern of events that she has alleged, *see* FAC at ¶¶ 72-96, is again based upon conjecture and speculation. Additionally, Plaintiff has offered no evidence that links any actual CMCSS employee who is alleged to have knowledge of her protected activity to the formation or implementation of the alleged scheme. Finally, Plaintiff has not set forth any evidence rebutting CMCSS's evidence that it was not solely Plaintiff's physical application records that were destroyed but also the records of other applicants.

In the end, Plaintiff has simply failed to set forth sufficient evidence that shows a *prima facie* case for her theory that (1) she was the victim of a purposeful scheme on the part of CMCSS to prevent her on-line AppliTrack application from being viewed and considered for open positions within CMCSS and (2) that this scheme was motivated by a retaliatory animus against her on the part of CMCSS. It is Plaintiff's claim to prove, yet she has not deposed any current or former employee of CMCSS to uncover evidence of the alleged retaliatory scheme. She has also not provided declarations or affidavits from anyone who has testimony that supports her allegation of a retaliatory scheme. Evidence of the facts necessary to prove Plaintiff's claim are simply not before the Court. Although Plaintiff has presented the Court with hundreds of pages of documentary evidence that she has attempted to piece together in support of her claim, this evidence, even when considered and viewed in the light most favorable to Plaintiff as the non-moving party, fails to raise

---

[23] The Court notes that an inherent inconsistency exists in Plaintiff's theory inasmuch as the protected activity upon which her claim of a retaliatory scheme is based did not occur until May 2010 but she contends that her AppliTrack application has been blocked since the time that she first submitted an application in 2009.

genuine issues of material fact that require resolution at trial. No reasonable jury could find in favor of Plaintiff on this claim based upon the evidence that is before the Court.

## C. Age Discrimination Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In the same manner as a case brought under Title VII, a plaintiff can prove an age discrimination case through direct evidence or through circumstantial evidence. Whatever method of proof is relevant, a plaintiff pursuing an ADEA claim must ultimately show that the employer's challenged conduct would not have been taken 'but-for' the plaintiff' age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).[24]

Two factors make resolution of CMCSS's request for summary judgment on Plaintiff's age discrimination claim somewhat difficult. First, a substantial part of Plaintiff's allegations, arguments, and supporting evidence are directed at either (1) claims that are based upon events that preceded the applicable 300 day time for her 2018 Charge and are thus not timely or (2) claims that she was not selected for positions in 2019 and 2020, events that occurred after her 2018 Charge and thus are not exhausted claims that are a part of this lawsuit. Second, CMCSS's supporting brief on the issue of age discrimination, *see* Memorandum in Support at 13-18, is not particularly illuminating, and it appears that CMCSS declined to take the type of discovery from Plaintiff that would assist in clarifying or narrowing her claims or, if it did take such discovery, it has not provided any part of it in support of the motion for summary judgment.[25]

It appears that Plaintiff has asserted two age discrimination claims that fall within the 300 day time period, that have been pled, and that are before the Court. The first involves a Business

---

[24] As noted *supra* at n. 21, Plaintiff's THRA claim is analyzed under the same standards as her ADEA claim and no separate analysis is required under the THRA.

[25] CMCSS acknowledges not serving written interrogatories on Plaintiff, *see* Reply at 2, and it is unknown whether Plaintiff was deposed.

Education Teacher position at Clarksville High School that was open in 2017 for which Plaintiff alleges that she applied but was not interviewed or selected and for which she alleges that a 26 year old male with little teaching experience was hired. *See* FAC at ¶ 99. Despite the fact that this claim was clearly set out by Plaintiff in the FAC, Defendant has not offered argument or evidence that is specifically directed at this claim. Without making any findings on the merits of Plaintiff's claim as to this position or even whether genuine issues of material fact exist, the Court finds that Defendant simply has not met its initial burden of showing that it is entitled to summary judgment on this particular claim.

The second ADEA claim before the Court involves the Business Education Teacher position at Northwest High School ("NWHS") for which Plaintiff was interviewed but not selected in October 2017. *Id*. at ¶¶ 101-112. Both parties have specifically addressed the merits of this claim and it is ripe for disposition on summary judgment. After review of the parties' arguments and evidence, the Court finds that CMCSS is entitled to summary judgment as to this claim.

Plaintiff offers no direct evidence of age discrimination. Accordingly, her ADEA claim that she was not hired for this position proceeds via the burden-shifting analysis. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). To establish a *prima facie* case of age discrimination, Plaintiff must show: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was not hired for the position in question; (3) she was otherwise qualified for the position; and (4) a younger applicant was hired or other circumstances exist that support an inference of age discrimination. *George v. Youngstown State Univ.*, 966 F.3d 446, 464 and 470 (6th Cir. 2020); *Blizzard, supra*. CMCSS does not ague that Plaintiff cannot make a *prima facie* case as to this claim. Accordingly, the Court proceeds to the next two steps of the burden-shifting analysis. Has CMCSS proffered a legitimate, non-discriminatory reason for its decision? If so, has Plaintiff presented sufficient evidence to raise a genuine issue of material fact as to whether this reason was not the true reason for the hiring decision but was a pretext for age discrimination on the part of CMCSS.

15

CMCSS denies that age played any role in the decision not to hire Plaintiff and asserts that Plaintiff was not selected for the NWHS position because Muckleroy, the principal of NWHS and the decision maker for the position, decided that the other candidate that was interviewed for the position, Leander Peters, was the best candidate for the position. *See* Affidavit of Muckleroy. Muckleroy asserts Peters held a Masters degree in Recreation and Sports Sciences, as well as a Bachelor's degree in Organizational Communications with a minor in Business Administration. *Id.* Peters had worked as an educational assistant/teacher at the CMCSS Alternative School and was an assistant football coach at NWHS. *Id.* Muckleroy asserts that she had a positive impression of Peters' ability to build student relationships and connections based upon her familiarity with him through his work as an assistant football coach at NWHS and upon recommendations about him from references at two other CMCSS positions that he held. *Id.* Muckleroy asserts she was familiar with Plaintiff as a substitute teacher at NWHS and had a less favorable impression of Plaintiff's ability to create good student relationships based upon Plaintiff's history as a substitute teacher at NWHS. *Id.* Muckleroy also asserts that Peters had an exceptional interview and that Plaintiff's interview was mediocre. *Id.*

Because CMCSS's asserted reason for its hiring decision is a legitimate, non-discriminatory reason, the burden falls on Plaintiff to show that this reason is actually a pretext for age discrimination. Plaintiff's burden is to show "'that the employer's proffered explanation is unworthy of credence.'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 667 (6th Cir.2000) (*quoting Burdine*, 450 U.S. at 256). Generally, pretext can be established by evidence showing that: (1) the employer's reason has no basis in fact; (2) the proffered reason did not actually motivate the employer's conduct; or, (3) the proffered reason was insufficient to warrant the challenged conduct. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

Plaintiff fails to satisfy her burden of showing pretext. Plaintiff first appears to argue that CMCSS's asserted reason should be discounted as having no basis in fact because CMCSS has not provided documentation supporting Peter's asserted qualifications. *See* Response at 19-20.

However, in the absence of any evidence from Plaintiff that Peters' qualifications are false, erroneous, or manufactured, CMCSS is not required to affirmatively verify Peters' qualifications with documentation in the stance of supporting its motion.

Plaintiff offers no evidence that the reason offered by CMCSS for hiring Peters did not actually motivate the hiring decision. Instead, she appears to argue that the stated reason is not sufficient to support the hiring decision because CMCSS has not shown that Peters was more qualified than her for the NWHS position. *Id.* She asserts that she has many more years of teaching experience than Peters and has a Bachelor's degree in Business Administration but that Peters possesses only a minor in Business Administration. *Id.* However, Plaintiff has offered no evidence that Peters was not objectively qualified for the position such that no reasonable decision maker could have selected him for the position. Accordingly, it was within the discretion of Muckleroy to select the candidate that she felt was best suited to the open position. *See Hawkins v. Memphis Light Gas & Water*, 520 Fed.App'x 316, 321 (6th Cir. 2013). Plaintiff's mere disagreement with the ultimate selection made by Muckleroy is not sufficient to show pretext. The Sixth Circuit has repeatedly stated that "it is inappropriate for the judiciary to substitute its judgment for that of management." *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (citations omitted). Plaintiff's "subjective view of [her] qualifications in relation to those of [Peters], without more, cannot sustain a claim of discrimination." *Id.*; *See Leonard v. Renewal House, Inc.*, 2012 WL 3579619 at *8 (M.D.Tenn. Aug. 16, 2012) (Sharp, J.) (the plaintiff's belief that she was at least as well-qualified as the selected individual is not sufficient to show pretext).

In the absence of evidence that Peters was not objectively qualified for the position, Plaintiff must present some type of other evidence that is probative of age discrimination. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011). She contends that her interview was a "guise" for discrimination and asserts that Muckleroy did not have Plaintiff's applicant documents during the interview, asked many personal questions that were germane to the open position, and directly asked Plaintiff "how old are you?" *See* FAC at ¶¶ 104-110; Memorandum in Opposition at 10.

17

Muckleroy denies asking Plaintiff her age and denies being able to see an applicant's age during the initial application and interview process. *See* Muckleroy Affidavit at ¶ 31. Plaintiff points out that this is a factual dispute and that her date of birth is clearly indicated on her college transcripts. *See* Plaintiff's Response to SUMF at ¶¶ 4, 12-13, and 23.

Once again, the parties have not taken advantage of the discovery process to clarify additional factual issues concerning Muckleroy's interview of Plaintiff. Given what is in the record before the Court, however, genuine issues of material fact do not exist requiring that this claim proceed to trial. It not surprising that a job applicant like Plaintiff who was not selected for a job will take issue with the substance and genuineness of the job interview. Nonetheless, the use of subjective criteria and questioning by Muckleroy during the interview process is not, standing alone, sufficient to establish pretext. *Browning v. Dep't of Army*, 436 F.3d 692, 697 (6th Cir. 2006). Plaintiff's assertions about the lack of genuineness in her interview process likewise fail to provide more than a scintilla of evidence of pretext. *See Cotton v. City of Franklin*, 2010 WL 3521751 at *14 (M.D.Tenn. Sept. 7, 2010) (Wiseman, J.) (plaintiff's evidence of discriminatory comments by members of decision making panel was not sufficient to raise a genuine issue of material fact on the issue of pretext for non-selected applicant who argued that his qualifications were better than selected applicants).

To be sure, a factual dispute exists as to whether Muckelroy asked Plaintiff her age and was aware of her age through other means presents a factual dispute. The parties' evidence on this issue is in direct conflict. However, the Court finds that this dispute fails to rise to the level necessary to constitute a genuine issue of material fact. Even if the Court takes as true that Muckelroy asked Plaintiff her age, this fact provides only a weak inference of age discrimination that is not sufficient to require resolution of this claim at trial. Muckelroys' actual knowledge of Plaintiff's age is not a particularly significant fact. This was not a review of only a paper application, and Plaintiff and Muckelroy met face to face. Further, given Plaintiff's employment history and the date of her college degree, her general age would be readily apparent to Muckleroy regardless, of whether she

18

asked Plaintiff her age. Given the paucity of other evidence that is probative of the issue of pretext, a reasonable jury could not find the existence of pretext even if the jury disbelieved Muckleroy's assertions that she did not ask Plaintiff her age or know her age from other means.

"The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). In the end, Plaintiff has simply not shown sufficient evidence upon which a reasonable jury could find that she would have been hired for the Business Education Teacher position instead of Peters but for her age.

D. Claim Based on Lack of Records Preservation

Plaintiff devotes a large part of her filings and argument to the contention that CMCSS is unable to produce her AppliTrack application records for the time period of 2009 to 2017 before it moved from the AppliTrack system to the current on-line application system that it is using. Plaintiff contends that CMCSS has violated the law by its failure to preserve these records and that this failure is further sanctionable under a "spoilage of evidence" theory.

As a factual matter, CMCSS asserts that it no longer has access to data that was part of the AppliTrack system, that it is unable to access the data in the format in which the AppliTrack vendor company has provided the old data to the CMCSS technology department, and that space issues are the likely reason for the destruction of any physical documents in the HR department. *See* Affidavit of Johnson at ¶ 16. Plaintiff disputes that the data is no longer available and contends that she has exchanged e-mails with the AppliTrack vendor which show that "there is no problem accessing AppliTrack." *See* Memorandum in Opposition at 5. However, the referenced e-mails are not buttressed by an affidavit or declaration from an agent of the AppliTrack vendor, nor with a deposition, and the e-mails are not sufficient evidence to support Plaintiff's contention that the AppliTrack data is still accessible to CMCSS.

19

Plaintiff's contention that she has an independent claim based upon CMCSS's failure to preserve these records is unfounded. The language set out in 42 U.S.C. § 2000e–8(c) and 29 C.F.R. § 1602.14 does create a duty on the part of employers to preserve "personnel records" relevant to an EEOC charge.[26] Where a party is in violation of these requirements, a federal district court has the authority, upon application of the EEOC, to issue an order requiring the party to comply. 42 U.S.C. § 2000e–8(c). However, the language of § 2000e–8(c) establishes that the EEOC, not a private plaintiff, has standing to enforce such a covered employer's duty, and no private cause of action arises out of these statutory and regulatory provisions. *See Carlson v. Ameriprise Fin.*, 2009 WL 10678283 at *13 (D.Minn. May 21, 2009), *aff'd*, 409 Fed.App'x 976 (8th Cir. 2011); *Catoire v. Caprock Telecommunications Corp.*, 2003 WL 21223258 at *2 (E.D.La. May 22, 2003).

With respect to Plaintiff's argument that CMCSS should be sanctioned because it has failed to properly preserve records, the Court is not persuaded by this argument. A party seeking a spoliation sanction must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Yoder & Frey Auctioneers, Inc. v. Equipmentfacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014).[27] Even if the Court presumes that the first of these elements is satisfied, Plaintiff fails to satisfy the second element with evidence that any records were destroyed by CMCSS with a culpable state of mind. Plaintiff also fails to satisfy the third element with proof of the relevancy of any destroyed records and resulting prejudice. As set out *supra* at Section V.B, many of the allegations made by Plaintiff

---

[26] 42 U.S.C. § 2000e–8(c) requires employers covered by Title VII to make, keep, and preserve records "relevant to the determinations of whether unlawful employment practices have been or are being committed." Under 29 C.F.R. § 1602.14, a covered employer subject to a preexisting EEOC charge of discrimination must "preserve all personnel records relevant to the charge or action until final disposition of the charge or the action."

[27] The 2015 amendments to the discovery rules do not appear to have materially changed these standards.

20

pertain to events that occurred more than 300 days before her January 2018 Charge and, thus, records pertaining to these events are not relevant to a timely claim. Plaintiff fails to show how her lack of access to any specific records from the AppliTrack system has prejudiced her ability to prove a timely claim of age discrimination. Further, the Court has found that Plaintiff's retaliation claim warrants dismissal because Plaintiff is unable to present evidence supporting her *prima facie* case for this claim. Plaintiff has not shown how a lack of access to her records from the AppliTrack system has prejudiced or hindered her ability to prove her retaliation claim.

E. Other Claims

In addition to her two main claims under Title VII and the ADEA, Plaintiff sets out a list of other "state and federal laws" which she contends CMCSS has violated and under which she contends she is entitled to relief. *See* FAC at ¶ 39. Plaintiff does not have viable legal claims under any of these statutes, regulations, or orders.

As noted *supra*, the language of 42 U.S.C. § 2000e–8(c) and 29 C.F.R. § 1602.14 does not create a private cause of action based upon statutory and regulatory record-keeping provisions. Plaintiff has not shown that any court has deemed that a private cause of action exists under the record keeping provisions set out at 29 C.F.R. §§ 1602.31, 1602.39, 1602.40, 1602.56, 1627.2, or 1627.3(b)(3), and this Court finds no basis for creating such a private cause of action. *See Davis v. Wilson Cty., Tenn.*, 2015 WL 6618631 at *4 n.5 (M.D.Tenn. Oct. 30, 2015) (Campbell, J.) (plaintiff failed to show that 29 C.F.R. § 1602.31 creates a private right of action).

Numerous courts have found that Executive Order 11246 does not create a private right of action. *See Utley v. Varian Associates, Inc.*, 811 F.2d 1279, 1288 (9th Cir.), *cert. denied*, 484 U.S. 824 (1987); *Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 822 (7th Cir.1975), *cert. denied*, 425 U.S. 943 (1976); *Weise v. Syracuse University*, 522 F.2d 397, 411 (2nd Cir. 1975); *Stefanovic v. Univ. of Tennessee,* 935 F.Supp. 944, 948 (E.D.Tenn. 1996); *Langland v. Vanderbilt Univ.*, 589 F.Supp. 995, 1016 (M.D.Tenn. 1984), *aff'd*, 772 F.2d 907 (6th Cir. 1985); *Stewart v. Classickle, Inc.*,

2007 WL 2229870 at *4 (W.D.Ky. Aug. 2, 2007).  Plaintiff offers no basis for disregarding these decisions.

Plaintiff has not shown any factual basis for a claim under Title VI, which provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

Although Plaintiff refers to the Tennessee Public Records Act ("TPRA"), Tenn.Code.Ann. §§ 10-7-501 *et seq*., she fails to set forth an actual claim under this state statute or show how the facts that she has alleged create a claim under this statute.

Plaintiff refers to 28 U.S.C. § 1658.  Section 1658 provides for the general federal statute of limitations and does not itself create a cause of action.  Plaintiff also refers to *Jones v. RR Donnelley & Sons Co.*, 541 U.S. 369 (2004).  The decision in *Jones,* which analyzes the applicability of Section 1658 to lawsuits brought under 42 U.S.C. § 1981, does not itself create a cause of action..

Finally, Plaintiff contends that the facts of her case support a claim under 42 U.S.C. § 1983 based upon violation of her Fourteenth Amendment rights.  While a claim under Section 1983 can generally be brought against a municipal school system as a state actor, Plaintiff fails to set out a cognizable theory of how her Fourteenth Amendment rights have been violated by CMCSS. Further, to the extent that she contends that she can proceed against CMCSS under 42 U.S.C. § 1983 because of its alleged violations of the record keeping statutes and regulations, her contention is incorrect.  42 U.S.C. § 1983 "does not provide an avenue for relief every time a state actor violates a federal law."  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005).  To sustain a claim under Section 1983, a plaintiff must demonstrate that the federal statute or regulation creates an individually enforceable right.  *Id*. at 120.  As noted *supra*, the record keeping statutes and regulations do not create an enforceable private cause of action arising from a violation of the statutes and regulations.  In the absence of such an enforceable right, Plaintiff cannot use 42 U.S.C.

22

§ 1983 to pursue a private claim based upon violations of those statutes and regulations.  *See Gonzaga University v. Doe*, 536 U.S. 273, 290-91 (2002).

## R E C O M M E N D A T I O N

For the reasons set out above, it is respectfully RECOMMENDED that the motion for summary judgment (Docket Entry No. 33) of Defendant Clarksville Montgomery County School System be GRANTED as to all claims in this case except for Plaintiff's ADEA and THRA age discrimination claim that is based upon a Business Education teaching position at Clarksville High School for which she was not hired in 2017.  Further proceedings should take place as to this claim.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made.  *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a).  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Any response to the objections must be filed within fourteen (14) days after service of objections.  *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

23