**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **KATHLEEN A. BUNT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 3:19-cv-01013** |
| **CLARKSVILLE MONTGOMERY** ) | **Judge Aleta A. Trauger** |
| **COUNTY SCHOOL SYSTEM,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM

Before the court are plaintiff Kathleen Bunt's Objections and Addendum to Objections (Doc. Nos. 56, 60) to Magistrate Judge Barbara Holmes' Report and Recommendation ("R&R") (Doc. No. 54), which recommends that the defendant's Motion for Summary Judgment (Doc. No. 33) be granted as to all claims in this case except for the plaintiff's age discrimination claims based upon a Business Education teaching position at Clarksville High School for which the plaintiff was not hired in May 2017.

For the reasons set forth herein, the court will overrule most of the plaintiff's Objections, adopt in part and reject in part the R&R, and grant in part and deny in part the Motion for Summary Judgment. Specifically, summary judgment will be denied as to the plaintiff's age discrimination claims premised upon her non-hiring for the Business Education teaching position at Northwest High School in October 2017, in addition to her non-hiring for the similar position at Clarksville High School in May 2017.

## I.     STANDARD OF REVIEW

### A.     Objections to a Report and Recommendation

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

District judges generally will not entertain issues and arguments that appear for the first time in objections to a magistrate judge's report and recommendation. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *see also Moore v. Prevo*, 379 F. App'x 425, 428 n.6 (6th Cir. 2010); *Glidden Co. v. Kinsella*, 386 F. App'x 535, 544 & n.2 (6th Cir. 2010) (declining to review an issue that the district judge did not consider because it was not presented to the magistrate judge); *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *1 (6th Cir. May 5, 2010) (concluding that a plaintiff waived a claim by failing to raise it before the magistrate judge).

In addition, while the court has the discretion to consider new evidence, "that discretion must be exercised sparingly." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 322 (1st Cir. 2008); *see also Blackwell v. McCord*, No. 3:13-CV-0739, 2016 WL 3444502, at *1 (M.D. Tenn. June 23, 2016) (Trauger, J.) ("It is not in the interest of justice to allow a party to wait until the Report and Recommendation . . . has been issued and then submit evidence that the party had in its possession but chose not to submit. Doing so would allow parties to undertake trial runs of their motion, adding to the record in bits and pieces depending upon the rulings or recommendation they received." (quoting *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998))). The Fifth Circuit

has suggested several factors the district courts should consider in the exercise of their discretion

to consider new evidence raised in a party's objections to a report and recommendation, including:

> (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the summary judgment motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted.

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003)

(citation omitted).

Finally, although *pro se* pleadings and filings are held to less stringent standards than those

drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants

are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*,

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### B.    Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact

and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "By its very terms,

this standard provides that the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary

under applicable law is of no value in defeating a motion for summary judgment. On the other

hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.*

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect

the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d

718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence

is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record—including, *inter alia*, depositions, documents, affidavits, or declarations— that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

## II.     FACTUAL BACKGROUND

The court adopts in its entirety the factual background set forth in the R&R, which, in turn, is drawn from the plaintiff's allegations in her Final Amended Complaint ("FAC") (Doc. No. 30). (Doc. No. 54, at 2–5.) Specific facts relevant to the discussion of the plaintiff's Objections will be addressed within that context.

## III.     PROCEDURAL HISTORY

### A.     The Motion for Summary Judgment

Bunt filed this *pro se* lawsuit in state court on October 17, 2019, against the Clarksville Montgomery County School System ("CMCSS"). The defendant removed the case to federal court in November 2019, on the basis of federal question jurisdiction. (Doc. No. 1.) The parties spent most of the next six months litigating the plaintiff's Motion to Remand and finalizing the pleadings. The plaintiff's eighty-page FAC (Doc. No. 30) was filed on May 13, 2020. As the Magistrate Judge noted in the Order denying the defendant's Motion to Strike Plaintiff's Amended Complaint, despite the court's "best efforts," the plaintiff "obviously did not heed the Court's

advice to reduce the length of her complaint," as a result of which it is "excessively long and filled with redundancy." (Doc. No. 32, at 2.) That observation identifies the defining feature of all of the plaintiff's filings in this case.

The FAC raises claims against CMCSS for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA").[1] The plaintiff also asserts that the defendant's actions violated various other federal and state statutes, regulations, constitutional provisions, and Executive Orders. A large percentage of the plaintiff's claims relate to the alleged spoliation of evidence, and her retaliation claim also hinges upon the alleged destruction of documents by the defendant. The plaintiff's ADEA claim is based on allegations that she has been wrongfully denied a full-time teaching job with CMCSS because her age.

After a period of discovery, the defendant filed its Motion for Summary Judgment, supporting Memorandum, Statement of Undisputed Material Facts, and the Affidavits of three witnesses, to which were attached various exhibits. Shortly before her deadline for responding, the plaintiff filed a Motion to Compel. (Doc. No. 38.) The Magistrate Judge extended the parties' deadlines for completion of the briefing on the Motion for Summary Judgment, pending resolution of the Motion to Compel, but she ultimately denied the discovery motion as untimely. (Doc. Nos. 39, 47.) The undersigned overruled the plaintiff's Objections to the non-dispositive order denying the Motion to Compel. (Doc. No. 53.)

---

[1] Because the analysis of claims brought under the THRA is identical to the analysis used for Title VII and ADEA claims, *see Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008), *and Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006), the disposition of the Title VII and ADEA claims also applies to the plaintiff's THRA claims.

Even before the court denied the Motion to Compel, the plaintiff had submitted a 267-page Response to the Motion for Summary Judgment, along with a flash drive containing an unknown quantity of exhibits. As the Magistrate Judge correctly observed, while the plaintiff's *pro se* status entitled her to some leeway in her filings, her overly lengthy response went "beyond the bounds of what can be accepted even in light of this afforded latitude." (Doc. No. 46, at 2.) Accordingly, the Magistrate Judge directed the plaintiff to file a new response that complied with the 25-page limit set out in Local Rule 7.01(a)(3) and to submit her exhibits in paper form rather than on a flash drive. The Magistrate Judge also recommended that the plaintiff "carefully consider which exhibits" were necessary for responding and that she not include exhibits that are "non-responsive or extraneous to the issues raised in the summary judgment motion." (Doc. No. 46, at 3 n.2.) The plaintiff thereafter filed her shortened Response memorandum (Doc. No. 51) along with 550 pages of exhibits (Doc. Nos. 51-1 through 51-5), and a Response to the Statement of Undisputed Facts (Doc. No. 50).

In her Response memorandum, the plaintiff contends that CMCSS provided untruthful or misleading evidence in support of its motion and that she has produced enough evidence to establish the existence of material factual disputes precluding summary judgment. She argues that the evidence she has presented gives rise to a reasonable inference that CMCSS retaliated against her for filing a Title VII lawsuit against a previous employer by blocking her application for positions with the defendant on "AppliTrack," the electronic on-line application system then utilized by CMCSS, and thus preventing her from being considered for open positions. She also asserts that she has presented evidence that younger teachers were hired for positions for which she should have been interviewed and hired and that CMCSS's proffered reasons for not hiring her to a full-time position are untrue and unworthy of belief and, therefore, that she has established

that they are pretextual. The defendant argues in its Reply that the plaintiff has not supported her claims with citations to particular documents in the record or by referencing deposition transcripts, answers to interrogatories or requests for admissions, or recent affidavits.[2] (Doc. Nos. 45, 52.[3])

### B.    The Report and Recommendation

The R&R first rejects the defendant's suggestion that summary judgment is warranted based solely on the *pro se* plaintiff's failure to properly support her Response through precise citations to the record or with admissible evidence already in the record. While noting that the plaintiff's failure to offer her own sworn testimony through a recent affidavit or declaration in support of the claims brought in this case is "unexplained and significant" (Doc. No. 54, at 8), the R&R nonetheless finds that the plaintiff made a good faith attempt to respond to CMCSS's arguments and its Statement of Undisputed Material Facts, to point out what she believes are disputed facts, and to present evidence she believes supports her claims.

Second, the R&R finds that any discrimination claims under Title VII or the ADEA are time-barred to the extent they arise from discrete acts for which the plaintiff did not exhaust administrative remedies by filing a charge of discrimination within 300 days of the allegedly unlawful employment conduct. That is, "any claims based upon events occurring more than 300 days prior to the charge filed by Plaintiff on January 19, 2018, *i.e.* events occurring prior to March 26, 2017, are presumptively viewed as being barred as untimely." (Doc. No. 54, at 9.) With regard to the plaintiff's claim that the "continuing violation doctrine" allowed her to pursue claims based

---

[2] The plaintiff provides her own declaration from 2012 as well as two declarations, also from 2012, that were filed as part of the plaintiff's state-court lawsuit against her former employer. (Doc. No. 51-2, at 34–54.) She has not prepared a more recent affidavit or declaration to support her allegations in this case.

[3] The defendant filed a Reply (Doc. No. 45) to the plaintiff's first, overly lengthy Response and a second Reply (Doc. No. 52) to the refiled Response. The second Reply purports to incorporate by reference the first.

on events beginning in 2009, the R&R found that this argument might "arguably hold some applicability to her claim that CMCSS . . . retaliated against her by purposefully blocking her AppliTrack application and by destroying any related physical documents," but it did not apply to discrimination claims premised upon the defendant's failure to hire her for specific jobs. (Doc. No. 54, at 9.) Thus, the R&R concluded that all claims based on the defendant's failure to hire the plaintiff for any discrete position prior to March 26, 2017 were time-barred. (*Id.* at 10.)

Similarly, the magistrate judge recommends the dismissal of any discriminatory hiring claims premised upon the plaintiff's not being selected for positions in 2019 and 2020—events that occurred after she filed her 2018 EEOC Charge and, as such, do not fall within the scope of that EEOC Charge or this lawsuit.

Third, the R&R recommends that the plaintiff's retaliation claim be dismissed on the basis that "there is simply insufficient evidence before the Court upon which any reasonable jury could find that CMCSS retaliated against Plaintiff because she engaged in protected activity involving her former employer." (*Id.* at 11.) The plaintiff's retaliation claim is premised upon the plaintiff's allegations that CMCSS employees "purposefully deleted, blocked, or otherwise took steps to prevent her AppliTrack application from being viewed by the decision makers for open positions at CMCSS from 2009 to 2017." (Doc. No. 54, at 11–12; *see also* Doc. No. 30 ¶¶ 6–96 (under heading "Retaliation/Destruction of Applicant Records/Blocking of Plaintiff's Applicant Records and Supporting Documents from Hiring Officials"); Doc. No. 34, at 11 ("Plaintiff argues that she was not hired for full-time positions within CMCSS as a result of a pervasive, multi-year effort, led by her employer and condoned by the EEOC, to block her applications before they reached hiring principals or other supervisors." (citing Doc. No. 30 ¶¶ 27, 28, 30, 32, 33)).) The Magistrate

Judge diligently combed through the record before concluding that the plaintiff has "no good evidence that CMCSS actually took an adverse action against her." (Doc. No. 54, at 11.)

Specifically, the Magistrate Judge found that the plaintiff's evidence shows, at best, that, during a brief time period in 2017, there may have been some issues with the status of the plaintiff's AppliTrack application. She concluded that this evidence "falls far short of showing the existence of a nearly decade long scheme preventing her application from being viewed as [she] alleges." (*Id.* at 12.) Similarly, the Magistrate Judge characterizes the plaintiff's insistence that CMCSS was aware of her protected activity—which concerned a different employer—as based on "conjecture, speculation, and supposition on her part," as a result of which "no reasonable inference of knowledge on behalf of CMCSS employees arises from what Plaintiff has presented as evidence." (*Id.*) And finally, the Magistrate Judge determined that the plaintiff has no evidence of a causal link between her protected activity, on the one hand, and the issues concerning her AppliTrack application and the destruction of related physical documents, on the other. According to the R&R, even viewed in the light most favorable to the plaintiff, the hundreds of pages of documentary evidence submitted by the plaintiff fail to raise a genuine issue of material fact.

As for the plaintiff's claims predicated upon a miscellany of statutes and regulations, as indicated above, an enormous part of the plaintiff's filings and argument is devoted to the plaintiff's contention that CMCSS violated various laws by failing to preserve her AppliTrack application records and the physical documents she submitted in support of her application from 2009 to 2017, before CMCSS moved from the AppliTrack system to its current on-line application system. The R&R recommends the dismissal of the plaintiff's claims under 42 U.S.C. § 2000e–8(c); 29 C.F.R. §§ 1602.14, 1602.31, 1602.39, 1602.40, 1602.56, 1627.2, and 1627.3(b)(3); and Executive Order 11246, because none of these laws creates a private cause of action. The R&R

finds that the plaintiff fails to support her claim that the defendant should be sanctioned for spoliation of records, principally because, even assuming the defendant had an obligation to preserve the relevant records, the plaintiff has no evidence that CMCSS destroyed the records with a "culpable state of mind" or that the plaintiff was prejudiced thereby.[4] The R&R also finds that the plaintiff has not provided a factual basis for claims under 42 U.S.C. § 2000d *et seq.* (Title VI), the Tennessee Public Records Act, Tenn. Code Ann. §§ 10-7-501 *et seq.*, or 28 U.S.C. § 1658. The Magistrate Judge also rejects the plaintiff's attempt to bring a claim under 42 U.S.C. § 1983 based on the defendant's violation of the referenced record-keeping statutes and regulations

Finally, the Magistrate Judge recommends granting in part and denying in part that portion of the defendant's motion directed to the plaintiff's ADEA claims based on hiring events that both took place within the statute of limitations and have been administratively exhausted and adequately pleaded. The R&R recognizes that the FAC asserts two age discrimination claims that strike within the sweet spot: (1) a claim based on the plaintiff's not being interviewed or hired for a Business Education Teacher position at Clarksville High School that was open in May 2017 for which the plaintiff alleges that she applied, but a 26-year-old man with little teaching experience was hired (*see* Doc. No. 30 ¶ 99); and (2) a claim involving the Business Education Teacher position at Northwest High School ("NWHS") for which the plaintiff was interviewed but not selected in October 2017 (*id.* ¶¶ 101–12).

Regarding the Clarksville High School position, the defendant's Motion for Summary Judgment does not proffer any argument or evidence directly related to this claim. Based on the defendant's failure to meet its initial burden of showing that it is entitled to summary judgment on

---

[4] In that regard, the plaintiff herself appears to have kept copies of all of the documents she claims the defendant failed to preserve.

this particular claim, the R&R recommends denying summary judgment as to the claim. Neither party has objected to that recommendation.

The Magistrate Judge recommends granting the defendant's motion, insofar as it is directed to the ADEA claim concerning the Business Education Teacher position at NWHS for which the plaintiff was not selected in October 2017. Analyzing the claim under the familiar *McDonnell Douglas* burden-shifting standard applicable to discrimination claims that rely on indirect evidence, the R&R finds that the plaintiff has not offered sufficient evidence to raise a genuine issue of material fact as to whether the defendant's proffered legitimate, non-discriminatory reasons (to which the parties refer as "LNDRs") for its decision not to hire her were pretext for age discrimination.

## C. The Plaintiff's Objections

Pursuant to Local Rule, specific written objections to a magistrate judge's report and recommendation on a dispositive matter must be accompanied by a memorandum of law that does not exceed twenty-five pages in length. L.R. 72.02(a). Despite previously being warned about the need to comply with page limitations, the plaintiff submitted an initial set of Objections (Doc. No. 56) that are nearly eighty pages in length and are accompanied by 379 pages of exhibits. Nearly two weeks later, the plaintiff filed a thirty-eight page "Addendum" to her initial Objections, to which are attached several additional exhibits. It is unclear to what extent the exhibits submitted with the Objections are duplicative of the nearly 550 pages of exhibits the plaintiff has already provided. The Objections, as amended by the Addendum, besides being excessively long and in violation of the Local Rules, are repetitive and circular in nature and contain a substantial quantity of completely irrelevant material. However, in the interest of judicial economy and reaching a resolution of the issues raised, the court will not require the plaintiff—this time—to re-file objections that comply with the page limitation set forth in the Local Rules. Instead, the court has

attempted to read and understand the Objections and the attached exhibits in an effort to completely resolve them herein.

The defendant filed a Response to the Objections (Doc. No. 61) that does not respond substantively to any of the Objections. It simply asserts that the plaintiff's evidence does not support her claims, that she misapplies or misstates what law might be relevant to her case, and that the R&R should be adopted.

## IV. DISCUSSION

### A. ADEA Claim

The Magistrate Judge recommends granting summary judgment on the plaintiff's age discrimination claim premised on CMCSS's failure to hire her for a position at Northwest High School in October 2017. There is no dispute, for purposes of the defendant's Motion for Summary Judgment, that the plaintiff has stated a *prima facie* case of discrimination in connection with that event and that the defendant has articulated legitimate, non-discriminatory reasons for its decision to hire a different candidate to fill the position. The sole question is whether the defendant's legitimate, non-discriminatory reasons are pretextual.

To establish a claim of discrimination in violation of the ADEA, a plaintiff must prove "by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). This requires showing "that age was the 'reason' that the employer decided to act." *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350–51 (2013)). "So, to defeat summary judgment, [the plaintiff] must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her [failure to be hired]." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021).

To establish that a defendant's proffered reason for the challenged employment action is pretextual, the plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it [did not hire] her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). This "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* at 400 n.4. The Sixth Circuit recognizes that plaintiffs "typically show pretext in one of three ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (citing *Chen*, 580 F.3d at 400). It also recognizes, however, that "these three categories are simply a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Id.* (internal quotation marks and citations omitted). Thus, a plaintiff is free to "pursue arguments outside these three categories," but she still must "articulate some cognizable explanation of how the evidence she has put forth establishes pretext." *Id.*

In her Response to the Motion for Summary Judgment, the plaintiff failed to focus on the defendant's legitimate, non-discriminatory reasons for this particular decision, instead referring generally to her Exhibit 82 and arguing that she was objectively more qualified for the position than the selected candidate. In recommending that summary judgment be granted as to this claim, the Magistrate Judge applied the appropriate standard in finding that the plaintiff failed to show pretext. In her Objections, however, the plaintiff has succeeded in directing the court's attention to portions of the record that give rise to a material factual dispute as to the veracity of the defendant's stated reasons for the hiring decision. As set forth below, according the *pro se* plaintiff

substantial leeway and construing the facts in light most favorable to her, the court finds that a material factual dispute precludes summary judgment on this claim.

### 1.  The Defendant's Proffered Reasons for Not Hiring the Plaintiff

The defendant's proffered reasons for hiring Leander Peters, who was 38 years old at the time, instead of the plaintiff, who was 52, are set forth in the Affidavit of Theresa Muckleroy (Doc. No. 33-3). Muckleroy was then the principal at Northwest High School ("NWHS") and the individual with hiring authority for that school. (*Id.* ¶¶ 6, 15–20.) According to Muckleroy, she was already familiar with the plaintiff because she had been a substitute teacher at NWHS while Muckleroy was principal, and she was familiar with Leander Peters, the other candidate, because he was an assistant football coach at NWHS. (*Id.* ¶¶ 6, 21.) Muckleroy testified that the students at NWHS particularly needed "positive role models and teachers with the ability to create relationships and connections with students" and that one of the "key factors" in her hiring decision was the ability of a teacher to build relationships with his or her students. (*Id.* ¶¶ 23, 28.) Muckleroy claims that, based on the "amount of student discipline referrals that [the plaintiff] wrote" and the number of requests for assistance in dealing with disciplinary issues in the classrooms where she substituted, the plaintiff had proven that "she would have been ineffective as a full-time teacher in our building" (*id.* ¶ 10); the plaintiff "lacked the ability to relate to [NWHS] students," which "impeded her classroom management" (*id.* ¶ 11); and the plaintiff's interview was "mediocre" (*id.* ¶ 25). Muckleroy stated that Leander Peters was "by far" the better candidate. (*Id.* ¶ 29.) She purportedly knew from witnessing his interactions with the students whom he coached and from contacting his references that he "excelled in student relationship building," while the plaintiff "provoked" students (*id.* ¶ 29); the students whom he had coached "responded well to him and they knew he cared about them," and she believed he would provide a "very positive role model for [their] students" (*id.* ¶ 23); and he "displayed great enthusiasm and energy" (*id.*). In addition,

he had "experiences in the business work force," which would "allow[] him to impart real-world knowledge and experiences" to his students. (*Id.*)

### 2. *Evidence of Pretext*

The plaintiff contends that these reasons are pretextual. As gleaned from dozens and dozens of pages of circular, redundant, and irrelevant material, the crux of the plaintiff's argument is that Muckleroy's statements that the plaintiff had numerous student discipline referrals, difficulty managing a classroom, and a poor rapport with her students are objectively false and, therefore, that there is a question of fact as to the truth of the proffered reasons for not hiring her. (*See* Doc. No. 56, at 41.)

The plaintiff, first, denies that she had numerous disciplinary referrals and points out that Muckleroy herself does not provide documentation to support this allegation. (Doc. No. 56, at 49–50.) Although the plaintiff failed to actually produce her own sworn affidavit or declaration attesting to her claim that she did not have numerous disciplinary referrals, the court, giving the *pro se* plaintiff the benefit of the doubt, finds that the plaintiff would be able to present her own testimony regarding whether she had made numerous disciplinary referrals in admissible form at trial. In addition, notably, the plaintiff cannot be expected to prove a negative—that is, to prove an *absence* of disciplinary referrals—with documentation. The only actual disciplinary referral for which Muckleroy provides documentation took place in 2019, almost two years after Muckleroy decided not to hire the plaintiff in October 2017. (*See* Doc. No. 33-3, at 8–9.) That documentation is presented to substantiate Muckleroy's assertion that the plaintiff's relationships with students "continued to be adversarial" after she was denied the Business Education job in the fall of 2017. (Doc. No. 33-3 ¶ 34, at 6.)

The plaintiff also denies that she has difficulty building relationships with her students. (Doc. No. 56, at 54, 74.) In challenging Muckleroy's testimony in that regard, she points out that

her direct supervisor, Melissa Izatt, had completed a reference for the plaintiff just days before the plaintiff's interview with Muckleroy, indicating that the plaintiff had a good rapport with students and good classroom management skills (*see* Doc. No. 51-3, at 32–36); that a performance evaluation done when she was in a classroom substitute teaching shortly afterward, in January 2018, indicated that she "exhibited excellent rapport with students!" (*id.* at 37); and that she had numerous service awards as well as referrals in her application file commending her communication skills, ability to build relationships with her students, and classroom management skills (*see, e.g.*, Doc. No. 51-3, at 5, 17).

The plaintiff also refutes Muckleroy's statement that she was "familiar" with both the plaintiff and Peters. She points out that Muckleroy failed to note that Peters had only been the assistant coach at NWHS for approximately a year, coming to NWHS "only . . . after school hours" to work with the football team, and that he had worked as an educational assistant in a different school. (Doc. No. 56, at 45.) In other words, the plaintiff questions how much opportunity Muckleroy actually had to witness his interactions with students. The plaintiff submits that Muckleroy was familiar with her because she had been substitute teaching at NWHS since before Muckleroy became principal in 2014, but, during that time period, Muckleroy had never come to the plaintiff's classrooms or witnessed her interactions with students. (Doc. No. 56, at 48.) The plaintiff also disputes having significant contact with any of the assistant principals that Muckleroy references in her affidavit.[5] (*Id.*)

Finally, the plaintiff disputes as a factual matter Muckleroy's assertion that Peters was better qualified, pointing out that she herself has a Bachelor's degree in Business Administration,

---

[5] Except for Assistant Principal Shane Smith, in connection with the 2019 incident referenced above.

whereas Peters merely has a minor in Business Education, and that she had twenty-six years of experience as a classroom teacher, whereas he had virtually none. (Doc. No. 56, at 44.) And she asserts that Muckleroy's description of Peters as having great "enthusiasm and energy with the ability to grow the [Business Education] program" was a thinly veiled reference to his youth, implying that the plaintiff, due to her age, did not have such energy and enthusiasm. (*Id.* at 50, 52.)

   *3. Discussion*

  A defendant's mistaken judgment of a candidate's qualifications will not subject the defendant to liability for employment discrimination. *See, e.g.*, *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability[.]"); *In re Lewis*, 845 F.2d 624, 633 (6th Cir.1988) ("Sears does not have to establish that the basis on which it acted in firing Lewis was *sound*; rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual.").

  At the same time, "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003); *see also Burdine*, 450 U.S. at 259 (holding that a defendant's error in judgment "may be probative of whether the employer's reasons are pretexts for discrimination."); *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into "whether the employer made a r*easonably informed and considered decision* before taking an adverse employment action") (emphasis added); *Lewis*, 545 F.2d at 633 ("One way for [the plaintiff to prove pretext] is to show that [the defendant's] asserted business judgment was so ridden with error that defendant could not honestly have relied upon it." (internal quotation marks and citation

omitted)). Thus, "[i]f a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Wexler*, 317 F.3d at 577 (citation omitted).

Upon *de novo* review, the court finds that the plaintiff's evidence is just barely adequate to call into question the truthfulness of Muckleroy's assertions that the plaintiff had a proven difficulty in classroom management and building student rapport, based upon which Muckleroy concluded that Peters was the much better qualified candidate. The evidence to which the plaintiff points would be sufficient to permit a factfinder to conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job—in light of references showing she had demonstrated an ability to build good relationships with students, good classroom management skills, twenty-six years of experience in classroom teaching and in working with at-risk youth in particular, and a Bachelor's degree in the subject-matter of the teaching job for which she was applying. In addition, Muckleroy's presentment of documentation of an event that post-dated the decision not to hire the plaintiff by almost two years actually calls into question the defendant's decision not to submit documentation of disciplinary referrals that might have been relevant to the actual challenged decision.

Because the plaintiff has "produce[d] sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it [did not hire] her," *Chen*, 580 F.3d at 400, the defendant is not entitled to summary judgment on the plaintiff's ADEA claim arising from her not being selected for the Business Education teaching position at NWHS in October 2017. The court will reject that portion of the R&R that reaches a contrary conclusion.

### B.  Retaliation in Violation of Title VII

#### 1.  Untimely Claims

The R&R recommends that any claims based on positions for which the plaintiff was neither hired nor interviewed prior to March 2017, whether for retaliation under Title VII or discrimination in violation of the ADEA, be dismissed as clearly time-barred. The plaintiff objects, asking: "How can one report something that they had not discovered yet?" (Doc. No. 56, at 26.) There are many problems with the plaintiff's position.

First, the plaintiff suggests that she did not, and could not, discover that the defendant had destroyed or blocked from view her on-line application documents until the summer of 2017, as a result of which she did not know any wrongdoing was happening prior to that date. The plaintiff's suggestion that she could not have discovered the alleged wrongdoing sooner is contradicted by her own allegation in the FAC that, in the summer of 2017, she investigated the Business Education teachers on the CMCSS website through their student profiles and found "five individuals that were hired long after 2009 when [the plaintiff] originally applied and were all under the age of 40 and had much less teaching experience" than she did. (Doc. No. 30 ¶ 98.) Clearly, more monitoring of the available jobs would have revealed to her much sooner that she was not hired for those positions. As the Sixth Circuit has recognized, application of the discovery rule to Title VII and ADEA discrimination claims simply means that the statute of limitations "runs as soon as a potential plaintiff either is aware, or should be aware after a sufficient degree of diligence, of the existence and source of an actual injury." *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 512 (6th Cir. 2008) (internal quotation marks and citation omitted). Under this standard, the plaintiff here had an obligation to exercise reasonable diligence in monitoring the status of her on-line application and verifying what jobs were posted for which she was qualified and should have been considered. *See id.* ("[The plaintiff's] claim of 'reasonable diligence' falls flat, as he made no effort for three

years to monitor the status of [his] application." (internal quotation marks and citation omitted). If she had been exercising reasonable diligence, the fact that the plaintiff did not receive interviews for specific positions prior to their being filled put her on notice that she may have been discriminated or retaliated against, such that application of the discovery doctrine would still not save claims related to positions for which she was not hired prior to March 2017.

Second, the plaintiff is alleging that the defendant either destroyed her application documents or prevented hiring authorities from accessing them, in retaliation for her having brought a Title VII claim against a previous employer. In other words, if her allegations are true, no hiring officials at any specific schools actually rejected her, either for retaliatory reasons (in violation of Title VII) or discriminatory reasons (in violation of the ADEA) between 2009 and 2016, because they never knew she intended to apply for jobs at their schools.

And, third, the plaintiff has no evidence— direct or circumstantial—that individual hiring officials (principals at different schools within CMCSS) either knew about her protected activity, for purposes of a retaliation claim, or discriminated against her on the basis of her age, for purposes of an ADEA claim, based on any position for which the plaintiff was not hired during that time frame. For this reason too, her claims based on individual positions for which she was not hired during that time frame are subject to dismissal.

Finally, to the extent the plaintiff is continuing to argue that the continuing violations doctrine applies to discrete claims of discrimination or retaliation, she is incorrect. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period

are actionable."). Nor has she shown that the defendant engaged in misconduct of the type that would operate to equitably toll the running of the statute of limitations.

In sum, the court finds upon *de novo* review that the defendant is entitled to summary judgment on any claims based on the plaintiff's not having been hired for any specific positions prior to March 2017.

### 2. The Plaintiff's Prima Facie Case for Timely Claims

In assessing the plaintiff's retaliation claim based on the alleged destruction or blocking of her online applicant files, the R&R applied the *McDonnell Douglas* standard applicable to cases that depend on circumstantial evidence and concluded that the plaintiff's evidence was insufficient to state a *prima facie* case of retaliation. Specifically, the Magistrate Judge found that there was "no good evidence that CMCSS actually took an adverse action against her," the second element of her *prima facie* case; no actual evidence that CMCSS was aware of her protected activity, the third element; and no evidence of a causal connection between her protected activity and "any issues concerning her AppliTrack application and the destruction of her related physical documents." (Doc. No. 54, at 11.) The Magistrate Judge concluded:

> In the end, Plaintiff has simply failed to set forth sufficient evidence that shows a *prima facie* case for her theory that (1) she was the victim of a purposeful scheme on the part of CMCSS to prevent her on-line AppliTrack application from being viewed and considered for open positions within CMCSS and (2) that this scheme was motivated by a retaliatory animus against her on the part of CMCSS. It is Plaintiff's claim to prove, yet she has not deposed any current or former employee of CMCSS to uncover evidence of the alleged retaliatory scheme. She has also not provided declarations or affidavits from anyone who has testimony that supports her allegation of a retaliatory scheme. Evidence of the facts necessary to prove Plaintiff's claim are simply not before the Court. Although Plaintiff has presented the Court with hundreds of pages of documentary evidence that she has attempted to piece together in support of her claim, this evidence, even when considered and viewed in the light most favorable to Plaintiff as the non-moving party, fails to raise genuine issues of material fact that require resolution at trial. No reasonable jury could find in favor of Plaintiff on this claim based upon the evidence that is before the Court.

(Doc. No. 54, at 12–13.) The undersigned, in short, agrees.

The plaintiff's objections to the dismissal of her retaliation claim are scattered through her initial set of Objections. In connection with her Objections, the plaintiff has attached as exhibits dozens of pages of argument as well as additional documents that, she claims, she omitted from her revised Response to the Motion for Summary Judgment after being directed by the Magistrate Judge to refile a Response that complied with the Local Rule pertaining to the length of briefs. The court has reviewed these documents, and they do not come to the plaintiff's aid.

The plaintiff continues to insist that the defendant's agents had knowledge of her protected activity because her lawsuit was "public knowledge" and "involved the Tennessee Department of Education," which also governs CMCSS. (Doc. No. 56, at 11.) The plaintiff's speculation in that regard is not evidence, and, as the Magistrate Judge noted, the plaintiff never deposed any witnesses in order to verify whether they had heard of her protected activity through such channels, nor has she produced any other actual evidence of such knowledge.

The plaintiff insists that Theresa Muckleroy's and Jeanine Johnson's references to the plaintiff's previous lawsuit in their affidavits are suspicious and give rise to a material factual dispute as to whether they were aware of her prior protected activity when they engaged in retaliatory acts. (*See* Muckleroy Aff., Doc. No. 33-3 ¶ 31; Johnson Aff., Doc. No. 33-2 ¶ 26.) This argument is specious. The affidavits were prepared in July 2020, after the plaintiff initiated this lawsuit and after she filed the FAC in May 2020, alleging that she had been retaliated against based on the filing of the previous EEOC claim and lawsuit. Johnson specifically testified that she was not aware of the plaintiff's protected activity "until [she] received and read the copy of the complaint that was presented to CMCSS in October 2019." (Doc. No. 33-2 ¶ 26.) It is not

suspicious that Johnson and Muckleroy were aware of the plaintiff's protected activity in July 2020, after the plaintiff filed her lawsuit for retaliation.

The plaintiff's claim that CMCSS knew in September 2017 that she was complaining about discrimination is also not substantiated. The plaintiff was inquiring around that time about whether her application was up-to-date and active in the AppliTrack system at that time, and Johnson confirmed that it was. Muckleroy described the plaintiff's attitude as "disgruntled" based on her having been passed over for job openings (Doc. No. 33-3 ¶ 27), but such an observation does not imply illegal discrimination.

The plaintiff takes issue with the Magistrate Judge's reference to her "theory" that CMCSS took adverse action against her by intentionally deleting, blocking, or otherwise taking steps to prevent her AppliTrack application from being viewed by hiring officials. The plaintiff insists that this is not merely a "theory" but fact proven by the 544 pages of evidence she submitted along with her opposition to the defendant's motion—evidence that, she claims, shows that she "had been deceived over an eight year period and Jeanine Johnson was at the center of this deception." (Doc. No. 56, at 36.) The court has reviewed the evidence to which the plaintiff refers and finds that it does not support her claims. At most, as the Magistrate Judge noted, it shows that there were some issues with the plaintiff's AppliTrack application during the summer of 2017. Nothing but the plaintiff's leap of fancy suggests a decade-long conspiracy to block her application from being viewed.

The plaintiff objects to the defendant's omission of any documentary evidence to support the assertions set forth in the three Affidavits upon which it relies. The plaintiff overlooks the fact that the Affidavits are made from each witness's personal knowledge, and the witnesses were not required to present documents to substantiate their testimony. Moreover, the defendant generally

has no obligation to present documentation to prove a negative—that is, to prove that it did not retaliate against the plaintiff. Rather, the plaintiff at all times bears the burden of producing evidence and proving her claims. The plaintiff fails to recognize the difference between fact-based statements predicated on personal observation and unsubstantiated speculation. The latter—which is all she offers in support of her retaliation claim—does not qualify as evidence.

The defendant is entitled to summary judgment on the plaintiff's claim of retaliation in violation of Title VII.

### C. Claims Under Miscellaneous Laws

1. *42 U.S.C. § 2000e-8 and 29 C.F.R. § 1602.14*

With respect to the Magistrate Judge's finding that 42 U.S.C. § 2000e-8 and 29 C.F.R. § 1602.14, upon which the plaintiff relies in support of her claim that CMCSS violated an obligation to preserve records and documents, the plaintiff now claims that she does not actually seek to bring a private cause of action based on these laws.[6] Rather, she references them in her FAC merely to "inform the Court" that CMCSS did not comply with its obligation to preserve the "applicant records in the AppliTrack system" and that the EEOC did not comply with its statutory duty to enforce CMCSS's obligation, also under 42 U.S.C. § 2000e-8. She brings these matters to the court's attention to urge the court to use its authority to issue an order to compel both the EEOC and CMCSS to "comply with the federal statutes in the interest of justice and as a matter of law." (Doc. No. 56, at 4.) She purports to be "baffled" as to why the court, "having this authority," did not assert it. (*Id.*)

---

[6] 42 U.S.C. § 2000e-8(c) requires employers covered by Title VII to make, keep, and preserve records "relevant to the determinations of whether unlawful employment practices have been or are being committed." Similarly, 29 C.F.R. § 1602.14 requires a a covered employer subject to a preexisting EEOC charge of discrimination to "preserve all personnel records relevant to the charge or action until final disposition of the charge or the action."

The plaintiff is mistaken, and she misreads the statute. As relevant here, if an employer fails to comply with its obligation to make, keep, and preserve records, the court "shall, upon application of the Commission, . . . have jurisdiction to issue to such person an order requiring him to comply." 42 U.S.C. § 2000e-8(c). In other words, *if* the EEOC requests that it do so, the court has the jurisdiction to issue an order requiring an employer to comply with § 2000e-8(c). No such application has been made in this case, and the court lacks authority under the statute to issue the order the plaintiff requests.

2.     *Relitigation of the Motion to Compel*

The court also notes a contradiction inherent in the plaintiff's position. Her claim that the defendant has failed to preserve relevant documents incorporates an assumption that the documents no longer exist. However, the plaintiff also seems to be requesting an order that the defendant produce the documents she claims, or it claims, it no longer has. In that regard, she is improperly attempting to relitigate the Magistrate Judge's denial of her Motion to Compel.

This attempt is made clear under the heading "Federal and State Statutes/Laws/ Constitutional Rights Clarification." (Doc. No. 56, at 15.) Here, the plaintiff "clarifies" that she is not seeking to obtain "relief" under the miscellaneous laws to which she refers, at least not in the same sense that she seeks relief under Title VII and the ADEA. Rather, she seeks "relief" in the form of a judicial "acknowledgment that these state and federal statutes were violated" and an order requiring the defendant to produce "the applicant records themselves," to which she is entitled "based on these federal and state statutes." (Doc. No. 56, at 16.) She states that she made a good faith effort to obtain these documents during discovery but was "stymied by CMCSS" and the denial of her Motion to Compel.

The court declines, at this juncture, to revisit the defendant's failure to produce discovery and the denial of the plaintiff's Motion to Compel. Further, the relief the plaintiff seeks—

effectively a declaration that the defendant violated the law and an order requiring it to comply with the law—is precisely the type of relief that the referenced laws do not afford a private litigant, for the reasons set forth in the R&R.

### 3. 42 U.S.C. § 1983 and the Fourteenth Amendment

The plaintiff also objects to the dismissal of her claims under 42 U.S.C. § 1983. The Magistrate Judge found that the plaintiff did not state a cognizable claim under § 1983 based on the violation of the miscellaneous record-retention laws that do not create a private right of action. Now, the plaintiff asserts that the defendant's actions in destroying or blocking her application from being viewed by hiring officials within CMCSS violated her constitutional right, protected by the Fourteenth Amendment, to pursue the career of her choice.

The Magistrate Judge did not err in concluding that the plaintiff fails to articulate a cognizable basis for relief under § 1983. As stated in the R&R, Section1983 "does not provide an avenue for relief every time a state actor violates a federal law." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005). Even assuming the truth of the plaintiff's assertion that the defendant destroyed her applicant files or blocked access to her application and that its doing so would arguably violate a number of federal and state laws, this action did not amount to a violation of the plaintiff's rights under the Fourteenth Amendment. At its root, the plaintiff's § 1983 claim, although she cites a "right" to pursue the career of her choice—is still premised upon the alleged destruction of, or blocking of access to, the plaintiff's employment application, in purported violation of laws that do not create a private right of action or a viable claim under § 1983.

### 4. Spoliation Sanction

The FAC also asserts that CMCSS should be sanctioned because it failed to preserve her applicant records, which she claims are material to her "charges of retaliation, records destruction, blocking of applications and age discrimination." (*See* Doc. No. 30 ¶ 39, at 17.) The R&R rejects

this "claim" as well, finding that, even assuming the defendant had control over her applicant records and an obligation to preserve them at the time they were destroyed, the plaintiff has nothing but speculation to offer as proof that the defendant had a "culpable state of mind" and no basis for arguing that the destroyed evidence was relevant to her claims. In particular, the R&R observes that many of the plaintiff's allegations pertain to events that are time-barred, as a result of which documents pertaining to them are irrelevant, and she has not shown how the purported destruction of documents has prejudiced her ability to prove a timely age discrimination claim. Second, as discussed above, the plaintiff is unable to present evidence to support even a *prima facie* case of retaliation, and she has not shown how any lack of access to records from the AppliTrack system has prejudiced her ability to prove her retaliation claim. (Doc. No. 54, at 20–21.)

The magistrate judge correctly articulated the standard for determining whether to sanction a party for spoliation:

> A district court may sanction a litigant for spoliation of evidence if three conditions are met. First, the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed. Second, the accused party must have destroyed the evidence with a culpable state of mind. And third, the destroyed evidence must be relevant to the other side's claim or defense. The party seeking the sanction bears the burden of proof in establishing these facts.

*Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 383–84 (6th Cir. 2013) (citing *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553–54 (6th Cir. 2010)). For purposes of her analysis, the Magistrate Judge presumed that the plaintiff could satisfy the first element. The plaintiff disputes the finding that the defendant did not have a culpable state of mind and that she has not shown prejudice, pointing out that courts have accepted mere negligence to satisfy the "culpable state of mind" requirement. *See, e.g.*, *Beaven*, 622 F.3d at 554 ("[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly. . . or negligently." (internal quotation marks and citations omitted)).

Even assuming that the defendant negligently destroyed some of the plaintiff's applicant records, the fact remains that the plaintiff cannot establish prejudice. First, notably, although the plaintiff asserts that the defendant has destroyed the application documents she uploaded into the defendant's system from 2009 through 2017, she herself is in possession of "eight years of documentation from the AppliTrack Applicant Tracking System." (Doc. No. 30 ¶ 36, at 15.) She cannot establish that she was prejudiced by the defendant's destruction of documents when she maintained copies of the same documents, and she has not identified any other documents of which she does not have copies that would support her claims. Moreover, as discussed above, any claims premised upon the failure to hire the plaintiff for specific positions prior to March 2017 are time-barred, as a result of which the defendant's purported destruction of documents related to those positions is not relevant to any viable claim. Nor are the purportedly missing documents relevant to her claim for retaliation. The objections to the Magistrate Judge's recommendation that the plaintiff's claim for spoliation sanctions be dismissed will, likewise, be overruled.

### 5. *Tennessee Public Records Act*

The plaintiff continues to assert that CMCSS's failure to retain records was in clear violation of the Tennessee Public Records Act ("TPRA") Tenn. Code Ann. § 10-7-101 *et seq.* The plaintiff, however, has not actually brought a petition for the production of records as authorized by the TPRA or established entitlement to relief on that basis. In particular, although she claims that Jeanine Johnson should have "immediately provided copies" to her when she inquired about her applicant documents in September 2017, the plaintiff does not actually allege that she requested copies or even requested to inspect the documents.

Notably, the TPRA does not require a government entity to provide copies of documents; instead, it permits citizens to *inspect* public records. *See* Tenn. Code Ann. § 10-7-503(a) (providing that "all state, county and municipal records . . . shall at all times . . . be open for personal *inspection*

by any citizen of Tennessee, and those in charge of such records shall not refuse such *right of inspection* to any citizen, unless otherwise provided by state law"). Under the statute, the denial of a request for information must be accompanied by a basis for denial. *Id.* § 10-7-503(a)(2)(B)(ii). A failure to respond is construed as a denial for the purposes of the act. *Id.* § 10-7-503(a)(3).

The process for pursuing an appeal of a denial of a request for information is also set forth in the TPRA. Section 10-7-505(a) states that, any citizen "whose request has been . . . denied . . . shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access." However, the statute is clear that "such petition shall be filed in the chancery court or circuit court for the county in which the . . . records sought are situated, or in any other court of that county having equity jurisdiction." *Id.* § 10-7-505(b). The statute does not authorize federal district courts to consider such petitions. *Accord United States v. Barnes*, Nos. 3:13-cr-117-TAV-HBG-1, 3:16-cv-443-TAV, 2016 WL 5108227, at *2 (E.D. Tenn. Aug. 22, 2016) ("This Court does not have jurisdiction to order the relief requested by Defendant."), *report and recommendation adopted*, 2016 WL 5108087 (E.D. Tenn. Sept. 20, 2016).

To the extent the plaintiff has attempted to bring a claim based on the denial of a public records request, the effort fails, as she has not followed the statutorily prescribed procedure for doing so, and the defendant is entitled to summary judgment as to liability arising in connection with any such claim.

## V.     CONCLUSION

For the reasons set forth herein, the court will overrule the vast majority of the plaintiff's Objections, adopt in part and reject in part the R&R, and grant in part and deny in part the Motion for Summary Judgment. Specifically, the court will reject the R&R insofar as it recommends that the plaintiff's ADEA claim premised upon her non-hiring for the Business Education position at NWHS in October 2017 be dismissed. The court will accept the recommendation that summary

judgment as to the plaintiff's claim related to a similar position at Clarksville High School for which she was not hired in May 2017 be denied and the recommendation that all other claims set forth in the FAC be dismissed with prejudice. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge